Do we have the luxury of being human with what the three of us have to do? Well, I'll be very brief. I don't know if any of you have had the opportunity or the experience of having a nightmare. And during the nightmare, you wake yourself up and you say to yourself, I'm only dreaming. And then you fall back asleep and you have that nightmare repeated. I know I've had that experience. I think that this case illustrates that experience because what happened to Mr. Singh in India was truly a nightmare, except that he was awake and he couldn't wake up. I actually, just again speaking only for myself in this, I find your arguments quite persuasive about the problems with the credibility determination that were made. But that brings me up against what I view as an alternative holding by the immigration judge, which was where the immigration judge assumes that he is credible and says, nonetheless, he doesn't believe it's more likely than not that he would suffer harm if he would return because he could live safely outside the Punjab state. Now, given the record in this case, including but not limited to the country conditions, and including but not limited to our knowledge of how really large and diverse the country of India is, why isn't that alternative decision supported by substantial evidence? Are you referring to when the immigration judge says he could have remained in Gujarat, the state of Gujarat, rather than living in Punjab? Yes. That's on page 29 of the administrative record. Well, the State Department reports do say, and those are the same State Department's reports that the judge relied on when he found that many Sikhs have fraudulent claims and didn't think he was credible. He thought that he was not credible. I understand that, but that's why I said what I did. But assuming he's credible. This is an alternative holding. Right. He says, assuming that, he still could have lived safely outside Punjab area. Those same reports indicate that the government of India has the ability to trap people down, to go to another part of India to find somebody. What in this record shows that there would be anything other than the local nightmare, to use your image, that would not recur were he to go back to a different part of India? That's I think the key issue that I'm having with your position in this case. Well, I appreciate your concern, Your Honor. And the incident that caused him to leave India was that people were looking for him in Gujarat. Apparently, some people had come to look for him. And that is what inspired him to actually leave. He didn't even know what that was about, though. He merely speculated what that was about. There wasn't, I guess I viewed that part of the record as not really establishing with any certainty at all that these were the same folks. I think that what happened was, because of the severity of his experience in 1995, which I guess I don't have to rehash for you, when he was in the forest and the people were shot, he's running in the dark, was so traumatic for him that the idea of having to go through that again or anything like it was not acceptable. And so he left. He just left the country. You know, that I think, as Judge Gibson says, maybe that's the difference between the human side and the legal side. The fact that it's so traumatic that someone doesn't want to stay in their country isn't the legal standard that we're allowed to apply if the objective piece, if in fact there is evidence that he could live safely elsewhere, why aren't we bound by that as supporting the immigration judge's ultimate decision? Well, this Court has found that if the persecution is perpetrated by the government, which in this case it was, the person is not obligated to seek refuge in another part of that same country where that government is still in control. And that case where this Court made that finding was also a Sikh case. An individual who had left one part of India fled to another, and this Court made the finding that when the persecution is perpetrated by the government, the person does not, it's not necessary to prove that you can live somewhere else in the country because the government has control over the entire country and therefore has the implied power to seek the person out again. Now, it's true from the record that he lived in Gujarat for several years without a problem. That is true. However, it is also true that the government of India has become nationalistic, the party that has been... It now has a Sikh Prime Minister. Yes. I know. There's now a change again. Well, which would seem contrary to your client's argument that that would be a problem for him now. Well, we don't know because the government could change again. We're not sure. Theoretically, we're limited to the record, but if you're going to bring up the additional changes, I think they work against your client's argument, just again speaking for myself, simply because it demonstrates the countrywide acceptance of a Sikh as a leader. Well, what I'm saying is when he was in Gujarat, there was a nationalist government in power, and many, many, many minorities, not only Sikhs, Christians, other kinds of people, even tribal people were severely persecuted. I'm sure you've read the report about churches being burned, et cetera. Now, in the Sikhs, we have a specific situation because you know that they were seeking a separate state, and that seems to have been somewhat resolved now. However, he suffered past persecution, and the government has never proven, because there was no past persecution found by the judge, that the situation has changed, although Your Honor raises a good point. There is a person in high office of the Sikh religion. However, that's never been determined at the lower level. That's never been discussed. And there is a line of cases that when someone suffers past persecution, there are humanitarian grounds under Chen, matter of Chen, for granting asylum when the persecution is atrocious. And the situation that he lived through miraculously in the forest running with the bullets and everything was atrocious. It's something only even the judge said simply by the grace of God that he survived. One would not want to have to go through that again or even remember it again. And I want to point out, even though you've graciously conceded, I think, that the judge was wrong in his credibility, he made so many mistakes. I was saying that for my part, that's where I wanted to focus my questions, somewhere else. But the other panel members may feel differently. So just briefly, he made in his decision, I mean, he said that there were no lights, that the car was turned in the opposite direction, that the second arrest was a year later. These are all not in the record. The lights were on and the guys could see what was going on. He didn't leave. There was all this interference during his talk and the judge interjects, how many feet, exactly how many feet, only obviously to trick him. But assuming that you assume that he's credible, still, there is a strong line of cases that would grant asylum to this person, even though perhaps, and we don't really know because these elections are new, the whole situation is new in India now. Even if it really does change, there is a humanitarian reason to grant this person asylum because of the severity of that event, the two events, and he was tortured and the government tortured him. He should not be subjected to reliving that torture in any way, shape or form. Thank you. If you are, are you going to save the rest of your time for rebuttal, then? Thank you. Okay. We will hear that from Ms. Schwartz. Good morning, Your Honors. May it please the Court. I am going to use the mics. I'm not sure I can speak that loudly. First of all. I'm sorry, you're going to have to speak louder. As I said, I think I'll need the mic. Is this better? Not much? How's this? Is this better? Maybe you can speak into one of them. Just move to the side and speak into. Can you, I sound like a commercial. Can you hear me now? Barely. Okay. I'll try to speak loudly. We're not that far. First of all, Chen has not been exhausted. There was no argument made at any point below to the Board or to this Court in the opening brief or the reply brief that a humanitarian grant of asylum was warranted. So that's not before this Court. We're willing, credibility is before this Court. And the government submits that the immigration judge did base his lack of credibility finding on the events, on his testimony. He had every right to view the testimony in the light with a heightened scrutiny because of the fact of such of a 100% fraud report from the State Department. That doesn't, it means that everyone who filed such a claimation, but it will be scrutinized. Well, scrutiny is fine. I guess what I had difficulty with was the absence of what to me seemed like specific, individually specific and cogent reasons. It's a little bit like saying this is a high crime area and you're walking around at night. Therefore, I am suspicious of you. And maybe it's okay to be suspicious, but you still can't stop somebody unless there's an articulable personal reason to them. And I view it in that light. Yes, he's entitled to be skeptical. But what, other than just saying a lot of people in your situation lie and it doesn't sound plausible to me, what else is there here? Well, let's look at the facts and as the immigration judge found them. First of all, as the immigration judge found, his fear of persecution in 2004 is based on one incident in 1994. He was, he gave one speech in college. Well, he was active in college, but he was arrested after one speech. He was taken with two others to a jail cell and he was beaten for 40 minutes and no way is that acceptable. However, not, because the organization he was working for has been identified as a terrorist organization, he was not, they were not trying to overcome his religious or political opinion, they were trying to get information about the organization and suspected terrorist activities, not his own personal ones. They were released the next day and this is important, not only because students protested outside, but because the district commissioner of police and two other police officials, that's on page 61 of the record, came and said, you can't do this, and they were released as a result, all three of them. Notably, petitioner, if they really wanted to kill him, the police knew how to do it. Okay, that's the second, gives no reason why he did nothing for a year. He finished his school, didn't engage in any more activity. Then all of a sudden, the police come to his house a full year later in his asylum application. He says it was a couple of months, but we'll overlook that. And he doesn't know why. He was beaten again for under an hour, or about an hour, and then the police got a phone call, at which point the beating stopped, he was placed in a car and taken to the middle of a forest. And he was released, and he was told to go, to run. And again, there were two other people. He doesn't know what happened to the two other people. If people were shooting in my direction, I wouldn't look to see what was happening either. His interest was in getting away. He did get away. The immigration job. He got away, but weren't there reports in the newspaper or someplace that two persons' bodies had been found? Yes, which brings me to the next point. First of all, he never established that that was this, it identified a location. He never established he was in that location. Well, how could he, other than by saying his testimony? I mean, in a. Well, he didn't. That's the point. He never testified. I was in Kawara at that time. That is the incident I am talking about. He never said that in his testimony. And even if he did, we don't have the newspaper article. But again, he didn't leave India then. He wasn't trying to prove his case. So he left. The interesting thing here is the immigration judge was right. If they wanted to kill him, he would be dead. He was in the middle of the forest. Apparently, two others were, three people were being shot at. That seems very odd. It seems to me that under that construct, the only person who can establish asylum is someone who's dead. Someone who testifies to this set of circumstances that they had me in the forest and they were shooting at me. They didn't have to tell him to run. They could have kept him by the car and shot him dead. We don't know what happened to the two other people. Apparently, in another situation, two bodies were found. So they did want those dead or they weren't able to get away. But if they're shooting at you in a forest, in a very controlled situation where there are four of them and three of you who are injured. I know in movies, the good guys or whatever always managed to shoot whoever they're shooting at. But in real life, it's not that easy. But they didn't have to release him and let up. And they released him and let him go. What's the difference if they say turn around and they shoot you in the back or they say run and they shoot you in the back? If they wanted to shoot him, they didn't have to let him run first. Unless they wanted to claim that he was trying to escape. Well, then they could have shot him in the back. But the point is, the police interceded before on his behalf. There's nothing to indicate that that phone call, they did get a phone call, which ended the interrogation. That's there's nothing to indicate that it wasn't the district commissioner and other police officials against it. You can't do this. Let him go. And this was their way of letting him go. Yes, it was a nightmare situation, but he did go. Then he makes it home. The point is, if he thinks they're trying to kill him and they know he's escaped because they haven't found his body within shooting range, he goes right home. If he's afraid that they're out looking for him, his first thought should be they're going to come back to my house. But he never testifies that the police went to his house related to this incident. And he went home and he didn't leave for another day. If he were really afraid that the police wanted to kill him, he would not have gone straight home. But he did. And then his family decided, well, you'll be safe somewhere else. And in fact, he was. He moved to Gujarat and he lived there safely for four years. This is what the immigration judge found implausible. It's just it's a better terror and Melendez situation. It doesn't have the ring of truth. It's not plausible. There's so many holes in the story. And there is actually requires something more than I just don't believe this unless there's something that's physically impossible. Again, he did escape. There's no indication that they went to follow him. They were shooting at him. And if again, they didn't have to let him go. And then he went straight home and nobody came looking for him. And then he relocated safely in Gujarat. And that's where I think your stronger argument will go that way. You're right. Basically, what happens is he lives there. Nothing happens to him. He's living with a friend. And again, remember, the only thing that he ever did that brought him to police attention was he gave a speech in 1994. And while the State Department reports do say that the police can find anyone in the country, they also say that it's only done when there's an outstanding warrant. There's no evidence that there was an outstanding warrant. There is no evidence that he was a leader. So he gives. And they were local officials the first time. Well, no, there was only one visit, Your Honor. And he does say that he was told that four officials came. Two had PP on their shoulders and they assumed they were Punjabi police. But why would they travel three hours by car to reach someone whose only offense of record was a speech in 1994? Why, after five years, would they go and look for him? Four with a sinister motive. I mean, maybe he won the lottery and they were coming to tell him. It's highly unlikely. But the point is he doesn't know the sinister motive. He gives four possibilities. One, because my name came to the forefront. Well, that's entirely speculation. How did his name come to the forefront in 1999 when he hadn't done anything? Well, maybe they raided the Golden Temple and they found my name on a list. Well, he said no lists were kept. No records were kept because it was too dangerous. He had two other reasons, which were equally speculative. And the court can look at them. I can list them. But he doesn't know. He's only guessing. Plus the fact I believe at the time he was living with a friend. He doesn't know if maybe they weren't looking for his friend. But the point is, this is 1999. It has, conditions haven't changed in 2004 when a Sikh is now prime minister. It's been gradual. In 1997, the Sikh party started gaining representation. And now the State Department reports indicate that as of 1999, there was the fighting between Sikhs and Hindus had minimized. Problems in the Punjab were practically the fighting between Hindus and Muslims in another part of the country. So the country conditions and the fact that he lived safely for four years somewhere else do support the immigration judge's decision. That there is no reason that there was, if the police came looking for him, there was a persecutory motive behind it. And that is absolutely fact-bound, supported in the record by the State Department reports and the immigration judge's finding. And the fact that if he were actually on a national watch list, that they found that he was such a danger because of the one speech in 1994 that they were still looking for him in 1999 and would drive three hours. Then if he's on a national watch list, he indicates no problem in obtaining a passport. He doesn't say he got a false passport in someone else's name. So you can't, if they're really looking for him, he wouldn't have gotten away that easily. But the point is, there's nothing to indicate that in 1999, the Punjabi police traveled three hours to find someone who had given a speech in 1994. Are there any questions, Your Honor? No, I think we have no further questions. Okay, let me conclude by saying there may be some reasons and he may obviously objectively fear that he has subjectively fear, but the objective facts are solid in the record that he has no basis in reality for that fear. And there is no basis for a finding that he, there is evidence which compels the conclusion that he has established eligibility for the relief he seeks. Thank you, Your Honor. Thank you. We do have some rebuttal time remaining. Your Honor, as to the argument made by the government regarding the incident in terms of the 1995 incident, the police came to his house and called him out by name. And when the father asked, this is in the transcript, when the father asks, why are you here? The police said, well, you'll find out, you'll find out in two or four days. You'll find out in two days. And they were apparently quite abusive to the father. The judge said when he was arrested the second time, they asked no questions. Actually, they did. And they tortured him with the specific intent of extracting information from him about the Sikh party, which is totally prohibited by the Convention Against Torture, which is part of the law of this country. In your decision in a recent case, actually a 2001 case, we, it was a similar situation where the government was trying to push someone off the road. And this court held, well, killing someone isn't the only way to silence them. You can also just really frighten them to silence them. And the fact that Mr. Singh heard these screams, he testified that he heard shots and screams, one can only assume that these other people were killed. Also, as far as the government has repeated that the second arrest took place a year later, actually, it was three months later. So one can assume that that second arrest was due to his leadership. He was a leader in the Sikh organization. He was giving speeches. He was well known. And it's totally absurd for it to be said that he was allowed to escape. Being released into a forest and being shot at is not an escape, is not a release. Let's assume we agree with you that the immigration judge did not give a sentence. What about his ability to relocate? I think that's the difficulty here. He lived four years someplace else. What is your response to that? Well, my response remains my initial response, in that it was so horrific for him, that nightmare that he lived through, that was actually a reality, that he just couldn't afford, physically or psychologically, to relive it. And that's why he left. When he heard that people were looking for him, that policemen were looking for him, he left. And he was safe for four years? Yes, he was. What evidence is there that he would not now be safe? Well, there was country-wide violence. Or he had no ability to live someplace else in India? There was country-wide violence perpetrated against Sikhs at that time. 94, 95 were pretty violent years. And many Sikhs were arrested, detained. There are many statutes and laws in India which allow the government to detain people. But that was then and this is now. And our question, the question that we have to decide is whether we are compelled by the record to conclude that he would not be safe in India on this record. Otherwise, we can't overturn what the immigration judge stationed. And I have difficulty, on the objective prong, seeing why we are compelled on this record to find that he can't be safe. Your Honor, with all due respect, I believe that's an evidentiary question. I mean, I'm arguing what's been presented on the record already. I'm not arguing current conditions in India. Neither am I. I'm asking you what on that, the existing record compels us to conclude, contrary to the IJ, on safe relocation. Well, I think you really have to reverse the credibility, number one. Safe relocation, we have no idea whether he was safe or not. It's true that there wasn't any testimony about. If we have no idea, then we have to. If the only way we can reverse it is to be compelled by the existing record to find to the contrary. So if the record is ambiguous on safe relocation, then. We have an idea as to country conditions. We don't have an idea as to what would have happened to him as if he stayed. If he stayed, we would have a record. Since he left, we don't have a record. That's why I say we have no idea because he left. He was so frightened by what had already happened to him that he just left before that happened. So the record is blank on that issue because he left. Had he stayed, more might have happened to him. He might not have lived through it. He might have been arrested again. He might have been tortured again. Since he left, we don't know. We do know country conditions, though, which were pretty horrific for Sikhs in that time, 95, 96, 97. There was still a great deal of violence, a lot of human rights violations. People were detained. They were not released for many, many years. Some are still detained, according to the current country reports. They were not given fair trials. They were tortured, and they remain in that situation. Not all of that has been corrected. Despite the progress in admitting Sikhs into the political system, people who were arrested in those years, many of them still remain detained. And that's another evidentiary issue, which can be presented if the case is remanded. Thank you. Thank you, counsel. The case just argued is submitted. We appreciate the arguments from both of you. And we will turn to the last argued case on the morning docket, which is United States versus Barkin. Thank you.
judges: Gibson , D.W. Nelson, Graber